IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NORTH ALABAMA FABRICATING COMPANY, INC., ) ) ) Plaintiff, ) ) v. ) ) BEDESCHI MID-WEST CONVEYOR ) COMPANY, LLC; DEARBORN MID-WEST ) CONVEYOR COMPANY, INC.; LARRY ) HARP; BRAXTON JONES, ) ) Defendants. ) | Case No. 2:16-cv-2740 |

## COMPLAINT

Plaintiff North Alabama Fabricating Company, Inc. ("NAFCO") submits its Complaint against Defendants Bedeschi Mid-West Conveyor Company, LLC, Dearborn Mid-West Conveyor Company, Inc., Larry Harp and Braxton Jones, and states as follows:

### PARTIES

1. Essar Steel Minnesota, LLC ("Essar") is a Minnesota limited liability company formed for the purpose of constructing and operating an iron ore mining and pellet manufacturing facility in the western Mesabi Range of northern Minnesota (the "Project").

2. Defendant Bedeschi Mid-West Conveyor Company, LLC is a Delaware limited liability company with its principal place of business in Kansas. Defendant Dearborn Mid-West Conveyor Company, Inc. is a Delaware corporation with its principal place of business in Kansas. For purposes of the dispute giving rise to this action, Defendants Bedeschi Mid-West Conveyor Company, LLC and Dearborn Mid-West Conveyor Company, Inc. acted interchangeably and as one in the same for purposes of its interactions with NAFCO and, therefore, are collectively referred to herein as "Mid-West."

EXHIBIT A

3. Mid-West is a material handling systems provider serving companies that operate in various commercial industries. Essar retained Mid-West as a material handling supplier for the Project.

4. In turn, Mid-West engaged NAFCO as a material sub-supplier for the Project. NAFCO is an Alabama corporation with its principal place of business in Alabama. NAFCO is a structural steel fabricator with offices in Birmingham, Alabama and manufacturing facilities in Cullman, Alabama and Winfield, Alabama. Mid-West contracted with NAFCO for NAFCO to manufacture fabricated steel equipment and support structures to be used in the construction of Essar's facility at the Project.

5. Defendant Larry Harp is President and CEO of Mid-West and works from Mid-West's principal place of business in Kansas. Upon information and belief, Mr. Harp is a resident of Missouri.

6. Defendant Braxton Jones is a Project Manager for Mid-West and works from Mid-West's principal place of business in Kansas. Upon information and belief, Mr. Jones is a resident of Missouri.

**JURISDICTION AND VENUE**

7. The Court has personal jurisdiction over Mid-West because its principal place of business is in Kansas and because it regularly transacts business in the State. The Court has jurisdiction over Defendants Larry Harp and Braxton Jones because they transact business in Kansas, committed tortious acts in Kansas and act as an officer and/or manager of Mid-West at its principal place of business in Kansas. The Court has jurisdiction over the subject matter of this action because NAFCO and Defendants are diverse for purposes of 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**EXHIBIT A**

8. Venue is proper because NAFCO and Mid-West have contractually agreed to this forum.

## FACTS

**THE CONTRACT DOCUMENTS**

9. In September 2015, Mid-West and NAFCO entered into a Blanket Subcontract Agreement (the "Subcontract"), a copy of which is attached hereto as Exhibit "A." In October 2015, pursuant to the Subcontract, Mid-West issued a Subcontract Purchase Order (the "Purchase Order") to NAFCO, a copy of which is attached as Exhibit "B."

10. The Purchase Order incorporates, among other things, the terms of the Subcontract, as well as the "Mid-West Conveyor Terms and Conditions" (the "Terms and Conditions"), a copy of which is attached as Exhibit "C." The Purchase Order, Terms and Conditions, and Subcontract are collectively referred to herein as the "Contract Documents," unless identified individually.

11. There is no contractual relationship between Essar and NAFCO.

12. Both the Purchase Order and Terms and Conditions set a contract price of $4,637,371.00 to be paid by Mid-West to NAFCO for performance under the Contract Documents. The Purchase Order and Terms and Conditions include payment terms of 95% Net 30 with a 5% retention.

13. Section 3 of the Terms and Conditions provides a mechanism by which Mid-West could "temporarily suspend" work and shipments from NAFCO. Specifically, it states that Mid-West "may change the rate of scheduled shipments or direct temporary suspension of scheduled shipments." Ex. "A," at § 3.

- 3 -
**EXHIBIT A**

14. The Contract Documents contain various other provisions entitling Mid-West to "change," "cancel" or "terminate" the Contract Documents under certain circumstances. As discussed more fully below, none of them are relevant to this matter, as Mid-West never invoked these provisions. Similarly, at no relevant time did Essar terminate or otherwise invoke limiting provisions of its contract with Mid-West. Therefore, the Contract Documents have remained unaltered since their original execution.

**DEFENDANTS BREACH THE CONTRACTS, COMMIT FRAUD**

15. Between November and December 2015, NAFCO delivered nine shipments of fabricated steel to the Project. All of the shipped product was detailed and manufactured by NAFCO specifically for the Project and cannot be used for any other. Mid-West paid the invoices associated with these shipments.

16. Construction on the Project was halted in the fall of 2015 when Essar was unable to secure additional funding needed to finish construction and commence production.

17. On December 22, 2015, Mid-West sent a letter to NAFCO stating:

> We have given Notice of Default to Essar Projects (USA), LLC, … on account of its failure to provide and maintain Letters of Credits as a method for payment of invoices submitted for work performed on the Essar Steel Minnesota Job. Given that we have no assurance of payment from the Owner, we hereby invoke the provisions of Section 3 of the Terms and Conditions forming a part of the [Purchase Order] under which we may "direct temporary suspension of shipments" for this Job.
>
> We will continue to pursue issuance of compliant Letters of Credit or other credit facilities from Owner that will assure payment and permit us to resume shipment. We will keep you advised.

18. Mid-West's temporary suspension applied to shipments of material then in the process of fabrication as well as all future shipments that were not yet in fabrication.

19. The next day, December 23, 2015, NAFCO sent a letter to Mid-West stating that it would suspend further operations and shipments and await "reinstatement of the suspended work."

20. Thereafter, NAFCO sent invoices to Mid-West for the additional costs NAFCO had incurred due to the suspension of work, as provided by Article 24 of the Subcontract. Mid-West failed to pay these invoices.

21. On May 2, 2016 representatives for Mid-West and NAFCO met to discuss the possibility of Mid-West lifting the temporary suspension and having NAFCO resume shipments to the Project. Both parties agreed that, if this were to occur, the payment terms set forth in the Contract Documents would continue to control and that Mid-West would be obligated to satisfy all outstanding invoices.

22. On May 4, 2016, Mid-West sent a letter to NAFCO lifting the temporary suspension and directing NAFCO to immediately "resume shipments" to the Project.

23. Mid-West requested that NAFCO ship the material as quickly as possible so that Mid-West could be paid under a letter of credit ("LOC") between Essar and Mid-West that required materials to be delivered on or before June 10, 2016.

24. NAFCO communicated to Mid-West that, given the accelerated shipment date, Mid-West would be responsible for the increased costs to NAFCO arising from the prior suspension and future accelerated schedule. Defendants Larry Harp and Braxton Jones represented to NAFCO's President, John R. ("Ralph") Parrish, that Mid-West would compensate NAFCO for these expenses.

25. On May 5, 2016, NAFCO sent a letter to Mid-West confirming its intention to resume shipments, but made clear that:

> Although we recognize the position that you are in in connection with the current Letter of Credit that you have with [Essar], … NAFCO will expect payment under the current terms of our written contract with you."

26. At no time has NAFCO or Mid-West altered the payment terms set forth in the Purchase Order and Terms and Conditions.

27. Between May and July 2016, NAFCO delivered another 33 shipments of fabricated steel to the Project, totaling more than $1.3 million. Like the shipments before, these materials were detailed and manufactured specifically for the Project and cannot be used for any other. Mid-West failed to pay the invoices associated with these shipments.

28. Mid-West assured NAFCO that the LOC provided the necessary surety to enable Mid-West to compensate NAFCO for its work. However, NAFCO repeatedly communicated to Mid-West that Mid-West's payment obligations to NAFCO were independent of any compensation it may receive under the LOC.

29. Mid-West has now denied responsibility for the increased costs NAFCO incurred as the result of its compliance with Mid-West's own demands for accelerated shipments.

30. More recently, Mid-West has engaged in a campaign of second-guessing the price basis and costs associated with NAFCO's past-due invoices in an attempt to fabricate reasons for not having already paid them. NAFCO has consistently and timely provided Mid-West all information it has requested. Even so, with respect to each of NAFCO's invoices, Mid-West raised its questions long after payment was due. Moreover, Mid-West failed to raise any such issue within a reasonable time after receipt of the invoices. As such, Mid-West is estopped from contesting its payment obligations.

31. Mid-West has also sought to informally vary the terms of the Contract Documents, including their payment terms, in an attempt to benefit itself at NAFCO's expense. NAFCO has repeatedly declined any attempts to amend or alter the Contract Documents.

32. At all times, NAFCO has reserved its rights under the Contract Documents.

33. On July 8, 2016, Essar filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the District of Delaware.

34. Mid-West has given NAFCO no indication that Mid-West plans to proceed, now or in the future, with any aspect of its contractual relationship with NAFCO. In fact, Mid-West's words and actions show that it does not intend to comply with its past or future obligations.

### COUNT I
### Breach of Contract
### (Mid-West)

35. NAFCO reasserts the foregoing allegations as though set forth herein.

36. NAFCO entered into a valid and binding contract with Mid-West that was supported by adequate consideration.

37. Mid-West breached its contractual obligations to NAFCO by, among other things: (a) failing to fulfill its duties and obligations to NAFCO; (b) failing to deal fairly, honestly and in good faith with NAFCO; (c) failing to honor or otherwise comply with its promises and obligations to NAFCO; (d) failing to make payment on invoices NAFCO submitted to Mid-West for shipped product and related costs; (e) representing to NAFCO that it will pay NAFCO when it is paid under the LOC in clear violation of the Contract Documents; (f) fraudulently inducing NAFCO to ship additional product following the temporary suspension; (g) withholding monies owed to NAFCO despite NAFCO having complied with Mid-West's requests; (h) refusing to permit NAFCO's future performance under the Contract Documents; and (i) otherwise

committing the acts and omissions described herein, including those set forth in paragraphs 7 through 34.

38.     Mid-West committed a breach antecedent to having attempted to vary the Contract Documents, alter NAFCO's future performance under the Contract Documents, or invoke any limiting provisions of the Contract Documents, including potential limitations on recoverable damages.

39.     Mid-West materially breached the contract as a whole and prevented NAFCO from realizing the benefit of its bargain with Mid-West. Pursuant to Kan. Stat. Ann. §§ 84-2-106, 84-2-270, 84-2-607, 84-2-610, 84-2-612, 84-2-703, 84-2-708, 84-2-709, 84-2-710, 84-2-720 and 84-2-721, among others, NAFCO is entitled to recover up to and including the full Purchase Order amount, plus all amounts incurred by NAFCO as the result of its compliance with Mid-West's temporary suspension and accelerated shipping schedule.

40.     The circumstances giving rise to this action would cause exclusive or limited remedies in the Contract Documents to fail of their essential purpose, within the meaning of Kan. Stat. Ann. § 84-2-719, and would serve to deprive NAFCO of its benefit of the bargain. Such circumstances include those set out in paragraphs 7-62 and the following:

> (a) Mid-West is unwilling to allow NAFCO to perform its remaining duties under the Contract Documents, thereby substantially impairing NAFCO's rights and benefits thereunder.
>
> (b) Mid-West induced NAFCO to incur substantial, additional costs as the result of Mid-West's temporary suspension and accelerated shipping schedule. NAFCO plainly communicated to Mid-West the nature, amount and cost basis of these extra-contractual costs. Mid-West explicitly agreed to compensate NAFCO for the costs. After NAFCO complied with Mid-West's requests, Mid-West denied any liability. As the result of Mid-West's inducement, Mid-West has waived any contractual limitation of damages.

(c) Mid-West induced NAFCO to occupy all or a substantial portion of its manufacturing facilities to produce the materials contemplated by the Contract Documents, thereby causing NAFCO to forego other business opportunities.

(d) It would be inequitable to allow Mid-West to receive all its benefits under the Contract Documents, yet force NAFCO to absorb the damages occasioned by Mid-West's wrongdoing.

(e) Mid-West has chronically breached the Contract Documents to a degree that suggests it had no intention of ever complying with its contractual obligations.

(f) Mid-West committed overt fraud against NAFCO, thereby permitting NAFCO to recover extra-contractual damages pursuant to, among others, Kan. Stat. Ann. § 84-2-721.

(g) Even in the absence of Mid-West's antecedent breach, Mid-West has not sought to avail itself of any contractual provision that would limit or otherwise prevent NAFCO's future performance under the Contract Documents.

41. Mid-West paid NAFCO's invoices associated with shipments to the Project during November and December 2015. As such, Mid-West is estopped from altering the cost basis and pricing structure of subsequent invoices.

42. Mid-West has refused to perform its remaining duties under the Contract Documents.

43. As a result of Mid-West's breaches of contract, NAFCO has been denied the benefit of its bargain with Mid-West and has incurred additional costs and expenses as a result of Mid-West's actions.

44. NAFCO is entitled to all statutory and common law damages including, but not limited to, those requested herein.

45. NAFCO's damages, including those for anticipated/lost profit under the Contract Documents, are provable with reasonable certainty.

## COUNT II
### Fraud, Promissory Fraud, Misrepresentation
### (Mid-West, Larry Harp, Braxton Jones)

46. NAFCO reasserts the foregoing allegations as though set forth herein.

47. Defendants Mid-West, Larry Harp and Braxton Jones misrepresented certain material facts to NAFCO including, but not limited to, those described in paragraphs 6 through 45, and as follows: (a) Mid-West would timely pay all invoices submitted by NAFCO; (b) Mid-West would lift the temporary suspension, pay NAFCO's past-due invoices, and pay all invoices associated with future shipments; (c) Mid-West would pay NAFCO all increased costs and expenses arising from Mid-West's accelerated shipment schedule; (d) Mid-West would not seek to alter the terms of the Contract Documents, including its payment terms; (e) NAFCO's past-due invoices were properly payable; and (f) Mid-West was agreeable to the cost basis and amounts of NAFCO's past and future invoices.

48. Larry Harp and Braxton Jones, individually and on behalf of Mid-West, repeatedly made these misrepresentations to NAFCO in person and in writing between September 2015 and July 2016.

49. At the time Defendants Mid-West, Larry Harp and Braxton Jones made these misrepresentations, they knew they were false and did not intend to perform the acts they promised.

50. Defendants Mid-West, Larry Harp and Braxton Jones made these misrepresentations of material fact willfully to deceive NAFCO.

51. The misrepresentations of Mid-West, Larry Harp and Braxton Jones induced NAFCO to act and/or refrain from acting, including, but not limited to: (a) shipping material to the Project; (b) foregoing other business opportunities; (c) utilizing the capacity and resources of

its manufacturing facilities for the work set forth in the Contract Documents; (d) incurring substantial costs and expenses arising from the temporary suspension; (e) incurring substantial costs and expenses arising from Mid-West's delays of its contractual obligations; (f) shipping additional material to the Project following the temporary suspension; and (g) incurring substantial costs and expenses arising from NAFCO's compliance with Mid-West's accelerated shipment demands.

52. NAFCO reasonably relied upon and acted to its detriment as a result of the misrepresentations committed by Defendants Mid-West, Larry Harp and Braxton Jones.

53. The fraud and misrepresentations of Defendants Mid-West, Larry Harp and Braxton Jones caused substantial loss and damages to NAFCO.

54. The acts and omissions of Defendants Mid-West, Larry Harp and Braxton Jones were willful, wanton, malicious, oppressive, reckless and/or were undertaken with the intent to defraud.

## COUNT III
### Fraudulent Suppression
### (Mid-West, Larry Harp, Braxton Jones)

55. NAFCO reasserts the foregoing allegations as though set forth herein.

56. Defendants Mid-West, Larry Harp and Braxton Jones suppressed certain material facts from NAFCO including, but not limited to: (a) Mid-West had no intention of abiding by the terms of the Contract Documents; (b) Mid-West had no intention to pay NAFCO pursuant to the terms of the Purchase Order and Terms and Conditions; (c) Mid-West was not willing or capable of complying with the Contract Documents; (d) Mid-West did not intend to compensate NAFCO for the additional costs associated with the temporary suspension; (e) Mid-West did not intend to compensate NAFCO for the additional costs associated with the accelerated shipment schedule;

and (f) after entering into the Contract Documents, Mid-West would seek to alter their terms after NAFCO had complied with its own obligations.

57. Defendants Mid-West, Larry Harp and Braxton Jones owed a duty and were obligated to disclose these and other material facts to NAFCO. Defendants Mid-West, Larry Harp and Braxton Jones also provided NAFCO information which was likely to mislead without complete and accurate communication of that information, including, for example, Mid-West's right to collect under the LOC.

58. Alternatively, Defendants Larry Harp and Braxton Jones made certain representations to NAFCO which, because of the circumstances, they later found to be untrue. As such, Defendants Larry Harp and Braxton Jones owed a duty to NAFCO to correct their misrepresentations.

59. Defendants Mid-West, Larry Harp and Braxton Jones intentionally, recklessly and/or negligently suppressed material facts from NAFCO between September 2015 and July 2016.

60. The fraudulent concealment, suppression and deceit committed by Defendants Mid-West, Larry Harp and Braxton Jones caused NAFCO to incur substantial losses and damages.

61. The acts and omissions of Defendants Mid-West, Larry Harp and Braxton Jones were willful, wanton, malicious, oppressive, reckless and/or were undertaken with the intent to defraud.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, NAFCO respectfully requests that Mid-West be summoned to appear and answer, and that upon final trial, the Court enter a judgment for NAFCO and against Mid-West as follows:

A. Damages in the amount of the $4,637,371.00 contract price provided for by the Purchase Order and Subcontract, plus all increased costs incurred by NAFCO as the result of Mid-West's temporary suspension and accelerated shipment schedule. Alternatively, NAFCO demands payment of all amounts invoiced to Mid-West totaling $2,657,843.11, plus anticipated/lost profit of $900,000.00 remaining under the Purchase Order.

B. Costs of demobilization, delay and remobilization as provided by, among others, Kan. Stat. Ann. § 16-805.

C. All other costs occasioned by Mid-West's delays, as provided by Kan. Stat. Ann. § 16-907;

D. All other actual damages, consequential damages, punitive and exemplary damages, statutory damages, and pre- and post-judgment interest;

E. Preliminary and permanent injunctive relief;

F. Restitution and disgorgement of all ill-gotten gains unjustly obtained and retained by Mid-West;

G. Attorneys' and expert witness fees, court costs and all other expenses associated with the prosecution of this action pursuant to Article 30 of the Subcontract; and

H. Such other and further relief to which NAFCO shows it is justly entitled at law or in equity.

## JURY DEMAND

NAFCO demands trial by jury of all claims and issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Pursuant to D. Kan. R. 40.2(a), NAFCO designates Kansas City, Kansas as the place of trial for this matter.

EXHIBIT A

Respectfully submitted this 28th day of October, 2016.

| MAYNARD, COOPER & GALE, P.C. | WALTERS BENDER STROHBEHN & VAUGHAN, P.C. |
|---|---|
| Will A. Smith (SMI284)* <br> wsmith@maynardcooper.com <br> 1901 6th Ave. N. Suite 2400 <br> Regions/Harbert Plaza <br> Birmingham, Alabama 35203 <br> Telephone: (205) 254-1000 <br> Facsimile: (205) 254-1999 <br><br> *Motion for leave to appear *pro hac vice* to be filed | By: */s/ David M. Skeens* <br> David M. Skeens (KS No. 13994) <br> dskeens@wbsvlaw.com <br> J. Michael Vaughan (KS Dist. No. 75013) <br> mvaughan@wbsvlaw.com <br> 2500 City Center Square, 1100 Main <br> Kansas City, Missouri 64105 <br> Telephone: (816) 421-6620 <br> Facsimile: (816) 421-4747 |